. McIlvaine, C. J.
It has been suggested that jurisdiction has not been obtained over the American Bell Telephone Company. There is no doubt that the relators intended to prosecute the American Bell Telephone Company, but through ignorance of thé trae name have designated it by the name of “ The Bell Telephone Company.” The misnomer, however, is-not fatal to the jurisdiction. It is shown that service of the writ was in fact made upon the proper agent of “ The American Bell Telephone Company.” It is true, advantage of the mistake might have been taken by plea in abatement, but as the company, by its silence, has shown itself to be content with the name by -which it has been sued, the court will regard the *309 ■objection that otherwise .might have been made on the ground ■of misnomer to have been waived. 2 Estee’s Pleadings, 449, note; 2 Cowen, 770 ; 1 Den. 451; Kyd on Corp. 227; Green’s Brice’s Ultra Vires, 3, note ; 13 Johns. 58 ; 1 Potter on Corp. :§ 12.
Whether any such duty, upon the principles of the common law, is owing from -respondents or either of them to the rela“fcors as members of the general public, as is claimed by them, growing out of the nature of the business in which respondents .are engaged and their relations to the public generally, we meed not stop to inquire, as, in onr opinion, the whole question 'between the parties may be determined by the provisions of 4he statute in such case made and provided.
Title 2, chapter 4 of the revised statutes of Ohio, from section 3454 to section 3470, prescribes the powers and duties ■of magnetic telegraph companies, and section 3471 of the same ■chapter provides, “ the provisions of this chapter shall apply .also to any company organized to construct any line or lines of telephone, and every such company shall have the same powers .and be subject to the same restrictions as are herein prescribed for magnetic telegraph companies.”
Among the powers conferred upon magnetic telegraph companies is the right to occupy public roads and other public grounds, and the power of eminent domain, and among their duties are the following, as prescribed in section 3462,. as .amended April 15, 1880, namely: “Every company, incorporated or unincorporated, operating a telegraph line in this .state, shall receive dispatches from and for other telegraph lines, and from and for any individual; and on payment of its usual charges for transmitting dispatches, as established by the .rules and regulations of the company, shall transmit the same with impartiality and good faith, under a penalty of one hun■dred dollars for each case of neglect or refusal to do so, to be recovered with costs of suit by civil action, in the usual name, and for the benefit of the person or company sending or forwarding, or desiring to send or forward the dispatch.”
This section, wdien construed in connection with section 3471, above quoted, makes it the duty of the Columbus Tele *310 phone Company to receive dispatches from and for telegraph lines, by the very words of the statute; but if not, such duty towards the relators and each of them is embraced in the succeeding clause, “ and from or for any individual.” The word “ individual ” is here used in the sense of person, and embraces-artificial or corporate persons as well as natural. The dispatches so received “ from or for,” must be transmitted “ with impartiality,” that is, without discrimination, either in respect, to persons or in the time or manner of transmission.
Such being the nature of the duty imposed upon the Columbus Telephone Company by the statute, it cannot shield itself from the performance thereof, by any self-imposed restrictions-contained in the stipulations of a contract with the American Bell Telephone Company, by which the right to use the instruments or license of the latter company was acquired. The-Columbus Telephone Company was bound to acquire from the-American Bell Telephone Company, such rights in its instruments and patent (or to provide itself by other means of all. such facilities), as were necessary to discharge its duties to the-public, as prescribed in the statute; otherwise, it had no right to engage in the business of operating a system of telephones-at all.
We do not mean to say, that as between the Columbus Telephone Company and the American. Bell Telephone Company,, the right to control the receipt and delivery of telegraph messages might not have been reserved to the latter company; but-we do hold, that no such right could be reserved whereby therelators could be deprived of the use of the system of telephones organized and managed by these telephone companies,, either jointly or severally.
And in regard to the American Bell Telephone Company, it is enough to say, after what has already been said in relation to-the Columbus Telephone Company, that it cannot be permitted to operate a line or system of telephones, in this state,, and in the face of the statute, either directly, or through the-agency of licensees, without impartiality, or in other words,, with discriminations against any member of the general public-who is willing and ready to comply with, the conditions im *311 posed upon all other patrons or customers, who are in like circumstances. And all contracts in contravention of the public j>olicy of this state, as declared in chapter 4 of the revised statutes, above referred to, must be declared void and of no effect.
It is claimed that the statute above referred to' cannot control or invalidate the contract in question, because the exclusive right to make, vend, and use these telephone instruments is vested by the assignment of letters patent, under an act of congress, in the American Bell Telephone Company; and that it is not within the power of a state to impair the right so secured. In our opinion, this statute is not the subject of constitutional infirmity. •
While it is true, that letters patent secure a monopoly in the thing patented, so that the right to make, vend, or use the same is vested exclusively in the patentee, his heirs and assigns, for a limited period ; it is not true, that a right to make, vend, or use the same in a manner which would be unlawful except for the letters patent, thereby becomes lawful, under the act of congress,' and beyond the power of the states to regulate or control.
This doctrine is fully discussed and settled in Jordon v. Overseers of Dayton (4 Ohio, 295), and Patterson v. Kentucky (97 U. S. 501). The doctrine of these cases may be stated thus: the right to enjoy a new and useful invention may be secured to the inventor and protected by national authority against all interference; but the use of tangible property which comes into existence by the application of the discovery is not beyond the control of state legislation, simply because the patentee acquires a monopoly in his discovery; “ The sole operation of the statute is to enable him to prevent others from using the products of his labors without his consent; but his own right of using is not enlarged or affected.” The property of an inventor in a patented machine, like all other property, remains subject to the paramount claims of society, and the manner of its use maybe controlled and regulated by state laws when the public welfare requires it.
It appears to ns, as a proposition too plain to admit of argu *312 ment, that where the beneficial use of patented property, or any species of property, requires public patronage and governmental aid, as, for instance, the use of public ways and the exercise of the right of eminent domain, the state may impose such conditions and regulations as in the judgment of the lawmaking power are necessary to promote the public good.
As respects the Western Union Telegraph Company we are of opinion that no case has been made which will justify a judgment against it; but as to the respondents, the Columbus Telephone Company and the Bell Telephone Company, the writ of mandamus prayed for should be made peremptory.

Judgment accordingly.